**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**VERTIQUE, INC.,**

          **Plaintiff,**

**-vs-**                                               **Case No. 6:05-cv-460-Orl-22DAB**

**DARBY AUTOMATION, LLC,**

          **Defendant.**

_____

## ORDER

This cause came on for consideration with oral argument on the following motion filed herein:

> **MOTION: MOTION FOR *MARKMAN* [1] RULING (Doc. No. 85)**
>
> **FILED:** February 14, 2006
>
> _____
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED** in part, and **DENIED** in part.

### *BACKGROUND*

In this patent infringement suit, Plaintiff Vertique, Inc. asserts that Defendant Darby Automation, LLC has infringed United States Patent 6,871,116 (herein "the Patent"). Pursuant to prior Court Order, the parties have filed a Joint Claim Construction Statement (Doc. No. 84), the instant motion and briefs (Doc. Nos. 86, 89, 90, 95), and the Court has held oral argument (Doc. Nos. 106, 107). For the foregoing reasons, the motion is **granted** to the extent it seeks a ruling that the

---

[1] *Markman v. Westview Instruments, Inc.,* 52 F. 3d 967 (Fed Cir. 1995), *aff'd*, 517 U.S. 370 (1996).

preamble is a limitation of the claim and that the claim must be construed as including a robot, as defined in the Patent; but **denied** to the extent it seeks any additional construction.

### *STANDARDS OF LAW*

The Federal Circuit's statement of the rules of claim construction are summarized in *Vitronics Corp. v. Conceptronic, Inc.,* 90 F. 3d 1576, 1582-83 (Fed. Cir. 1996):

> First, we look to the words of the claims themselves, both asserted and nonasserted, to define the scope of the patented invention. See *Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 620, 34 USPQ2d 1816, 1819 (Fed. Cir. 1995). Although words in a claim are generally given their ordinary and customary meaning, a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history. *Hoechst Celanese Corp. v. BP Chems. Ltd.,* 78 F.3d 1575, 1578, 38 USPQ2d 1126, 1129 (Fed. Cir. 1996) ("A technical term used in a patent document is interpreted as having the meaning that it would be given by persons experienced in the field of the invention, unless it is apparent from the patent and the prosecution history that the inventor used the term with a different meaning.") (citations omitted); *Hormone*, 904 F.2d at 1563, 15 USPQ2d at 1043 ("It is a well-established axiom in patent law that a patentee is free to be his or her own lexicographer and thus may use terms in a manner contrary to or inconsistent with one or more of their ordinary meanings.") (citations omitted).
>
> Thus, second, it is always necessary to review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning. The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication. *Markman*, 52 F.3d at 979, 34 USPQ2d at 1330. As we have repeatedly stated, "[c]laims must be read in view of the specification, of which they are a part." *Id*. at 979, 52 F.3d 967, 34 USPQ2d at 1329. The specification contains a written description of the invention which must be clear and complete enough to enable those of ordinary skill in the art to make and use it. Thus, the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.
>
> Third, the court may also consider the prosecution history of the patent, if in evidence. *Id*. at 980, 52 F.3d 967, 34 USPQ2d at 1330; *Graham v. John Deere*, 383 U.S. 1, 33, 86 S.Ct. 684, 701-02, 15 L.Ed.2d 545, 148 U.S.P.Q. 459, 473 (1966). This history contains the complete record of all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims. As such, the record before the Patent and Trademark Office is

often of critical significance in determining the meaning of the claims. See *Markman*, 52 F.3d at 980, 34 USPQ2d at 1330; *Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576, 34 USPQ2d 1673, 1676 (Fed. Cir. 1995) ("The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution.") (citations omitted). Included within an analysis of the file history may be an examination of the prior art cited therein. *Autogiro Co. of America v. United States,* 181 Ct. Cl. 55, 384 F.2d 391, 399, 155 USPQ 697, 704 (1967) ("In its broader use as source material, the prior art cited in the file wrapper gives clues as to what the claims do not cover.").

Thus, the Court looks to the language of the claims themselves, the specifications, and, if in evidence, the prosecution history of the patent in suit.[2] "However, in looking to the specification to construe claim terms, care must be taken to avoid reading 'limitations appearing in the specification . . . into [the] claims.'" *Interactive Gift Exp., Inc. v. Compuserve Inc*., 256 F.3d 1323 at 1331(Fed. Cir. 2001) (quoting *Intervet Am., Inc. v. Kee-Vet Labs., Inc*., 887 F.2d 1050, 1053 (Fed. Cir. 1989)).[3] *See also Teleflex, Inc. v. Ficosa North America Corp*., 299 F.3d 1313 at 1326 (Fed Cir. 2002) ("As we have often stated, the claims must be read in view of the specification [citation omitted], but limitations from the specification are not to be read into the claims [citation omitted].")

"When claims are amenable to more than one construction, they should when reasonably possible be interpreted so as to preserve their validity."[4] *Modine Mfg. v. U. S. Intern. Trade Comm.,* 75 F. 3d 1545, 1557 (Fed. Cir. 1996). However, such is not always possible. *See Karsten Mfg. Co. v. Cleveland Golf Co.,* 242 F. 3d 1376, 1384 (Fed. Cir. 2001) (noting that court is not unlimited in the

---

[2]Occasionally, courts have also referred to extrinsic evidence. Consideration of such evidence, however, is generally held to be appropriate only if analysis of the intrinsic evidence does not resolve the ambiguity in a disputed claim term. *Vitronics,* 90 F. 3d at 1583.

[3]Reading the Federal Circuit cases drawing this distinction provides little reliable guidance on the difference between construing a term and incorporating an additional limitation.

[4]When claim construction issues are presented to the Court prior to and separate from dispositive motions or trial, the Court may have little to consider regarding invalidity issues.

extent to which it can interpret claims, when the claim's language embraces the prior art); *Rhine v. Casio, Inc.,* 183 F. 3d 1342, 1345 (Fed. Cir. 1999) ("[I]f the only claim construction that is consistent with the claim's language and the written description renders the claim invalid, then the axiom does not apply and the claim is simply invalid.")

### *THE CLAIMS*

As made clear at argument, although the parties have cited numerous terms for construction in their Joint Statement, most of the terms offered are not in serious dispute and need no interpretation from the Court, at least at this stage of the case. What is really at issue is whether the claims -- which set forth a method for loading a pallet-- require the use of a robot.[5] Darby contends that the language of the claim, the preamble, the specifications and the patent history all support a construction that the invention must include a robot, in order for the claims to have any patentable meaning or validity. Vertique contends that it did not limit its invention to a robot, but merely recited certain steps to be done in a certain way.

The asserted claims of the Patent are claims 1, 2, 10, 11, 13-15, and 24 and 25. Claim 1 is an independent claim and serves as the source of the present dispute:

What is claimed is:

1. A method of determining pallet layers for placement by a material handling system robot comprising:
    identifying cases for inclusion in a pallet;
    identifying case dimension information for the cases;

---

[5] As counsel for Darby stated at the hearing, "We think that what the case is all about is whether this patent requires a robot or not. And in that regard, I think the two primary–we have a number of, as you pointed out, we have a number of terms that we're asking for the Court's instruction on. And but I think the two most important points are the robot, the construction of the word robot, and then a construction of the claim as to the point of whether the preamble of the claim is a limitation in the claim." (Doc. No. 107 at 5). Counsel for Vertique seemed to agree, in principle: "[W]e were asked to exchange proposed claim term definitions. As a result, we have a joint claim construction chart that is many times longer and more complex than necessary." *Id.* at 45. "Now, does the patent require a robot? I think that's a fundamental question." *Id.* at 59.

>    using the case dimension information, classifying the cases into at least one group, wherein each group is defined by a height range such that cases classified within a group have a height within the height range associated with that group; and
>    assigning cases of one of the groups to locations within a same pallet layer, wherein the pallet layer has an area within a predefined area range.

Col. 15, Lines 37-50.

The Court finds that the preamble ("for placement by a material handling systems robot") is a limitation on the claim. As Vertique acknowledges in its papers, there is no litmus test for determining when a preamble is merely a statement of purpose or when the preamble constitutes an additional limitation of a claim. Doc. No. 90 at 7, citing *Catalina Mktg. Int'l, Inc. v, Coolsavings.com, Inc.,* 289 F.3d 801, 808 (Fed. Cir. 2002). "The effect given to preamble language can only be resolved by looking at the entirety of the patent to understand what the inventors actually invented and intended to encompass by the claim." *Id.*

The Patent is entitled[6] DETERMINING PALLET CASE CONFIGURATIONS FOR PLACEMENT BY *A ROBOT* (emphasis added). As set forth in the Background section of the Patent:

> This invention relates to material handling systems and, more particularly, to building pallets using robotic systems.

Col. 1, Lines 9-10.

As summarized in the Patent:

> The invention disclosed herein provides a solution for building pallets of cases within an automated material handling system. More particularly, those cases which cannot readily be added to a pallet as a full layer, for example by a palletizer or a full layer gantry, can be arranged and ordered for placement in a case by case fashion by a robot.

Col. 2, lines 11-17.

---

[6] The title of a patent is not a strong indicator of limitations but is not irrelevant to the proper analysis of the patent as a whole.

The discussion of the prior art, contained in the Patent, makes it clear that the invention is directed to the problem of instability in robotically stacked pallets. *See* Patent, Col. 1, lines 46-49; 59-63. The specifications are replete with references to "an automated material handling system configured with a robot." *See, e.g.,* Patent, Col. 2, Lines 17-20; 27-30; 37-40; 67-Col. 3, Line 2; Col. 3, Lines 14-16; 20-23. The specifications repeatedly refer to "**the** robot" (*see, e.g.,* Col. 3, Line 14; Col. 2, Line 38; Col. 4, Line 24); and detail the invention in terms of its operation with respect to robots (for example, Col. 3, Lines 31-33, noting that the spacing between the case of the layer "can be adjusted to accommodate a robotic case grasping mechanism"). Importantly, the Patent notes:

> Although the present invention is not limited to a particular type of robot, one example is a robotic arm equipped with a case grasping mechanism.

Col. 4, Lines 65-68.[7] In light of the pervasive nature of the references to a robot, Vertique's argument that the preamble merely serves as an intended use for the invention is unpersuasive. It is not an intended use for the invention (a method for building pallets using robotic systems); it *is* the invention.

Compelling evidence that the preamble is, indeed, a limitation on Claim 1 comes from the language of the dependent claims. Claim 3 is a dependent claim which purports to encompass the method of Claim 1, and specifically notes the "pallet layers to be placed *by the robot.*" Col. 15, Line 63 (emphasis added). Claims 4, 11, 12, 15 and 17 also depend from Claim 1 and also refer to "the robot." As these dependent claims refer to *the* robot, and otherwise contain no independent reference (such as "*a* robot"[8]), the claims only make sense if the preamble is included as part of Claim 1. The

---

[7] Note that the specifications do not say that the invention is not limited to the use of robots; only to a particular *type* of robot. The obvious (and only logical) inference is that use of a robot is part of the invention.

[8] Claim 2 refers to the additional step of building the pallet with "a" robot. This usage creates some ambiguity and the possibility that Claim 2 lacks scope. The Court views Plaintiff's attempt to ignore the numerous references to "the" because of this inconsistency as disingenuous. Plaintiff is not entitled to its favored reading of the patent based on some ambiguity that
(continued...)

preamble is therefore essential to give meaning to the claim, and thus, is a limitation. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.,* 182 F. 3d 1298, 1305 (Fed. Cir. 1999) (a preamble is a claim limitation if it recites essential structure or steps, or if it is "necessary to give life, meaning, and vitality" to the claim.").[9]

Having determined that the preamble does, indeed, serve as a limitation on Claim 1, the parties ask the Court to construe the term "robot." At issue is whether a "robot" includes, in essence, all automated equipment (such as a palletizer or gantry) or whether it has a more limited meaning. Vertique proposes the following construction:

> A robot [or a robotic case placement mechanism] is a device which is capable of placing a single case onto a pallet at a time, but is not restricted to placing single cases and not restricted as to its location within the material handling system.

Joint Claim Construction Statement, at 3.

Darby contends that the word "robot" should be construed to mean "a programmable case placement mechanism that is capable of placing individual cases on a pallet one at a time." Joint Claim Construction Statement, at 3. The Court finds that the Patent itself has expressly defined the term "robot" and that definition is unambiguous, and therefore controlling:

> The term "robot" or "robotic system" as used herein, refers to a robotic case placement mechanism which is capable of placing a single case onto a pallet at a time.

Col. 4, Lines 62-65. The definition says nothing about the robot's location within the material handling system or other negative limitation. The Patentee is his own lexicographer. No further

---

[8](...continued)
Plaintiff itself introduced by its perhaps careless choice of words.

[9]In it papers and at argument, Darby raises several additional points to support its contention that the preamble is a limitation; including the argument that without a robot to implement the method claimed, the claim is merely an unpatentable series of mental steps. As the Court finds that the limitation is clear on the face of the Patent, it need not reach this contention.

-7-

construction or interpretation of this term is needed. Whether a particular machine, part of a machine or a combination of machines meets this definition is not a matter presently before the Court.

It is not the Court's task or inclination to rewrite the Patent in the guise of construing it.[10] Thus, the Court answers the fundamental question posed by the parties in the affirmative – the invention claimed does require a robot, as that term is defined in the Patent – and finds that the remaining terms need no further interpretation by the Court, at least at this stage of the litigation. It may well be that other terms will need interpretation at other stages of the case (*e.g.,* summary judgment or trial motions or jury instructions). However, it appears any such issues are best left for consideration in context, rather than as abstract semantic arguments, as they are presented here.

**DONE** and **ORDERED** in Orlando, Florida on June 26, 2006.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

---

[10]Most of the other terms the parties seek "interpretation" of (*e.g.,* "layer," "placement," and "method") are common English words. The parties have not demonstrated that an abstract elucidation of such terms in the context of the present motion would do anything more that introduce another set of words (those synonyms chosen by the Court) for the parties to argue about.