**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**VERTIQUE, INC.,**

        **Plaintiff,**

**-vs-**                                        **Case No. 6:05-cv-460-Orl-22DAB**

**DARBY AUTOMATION, LLC,**

        **Defendant.**

_____

## ORDER

This cause came on for consideration without oral argument on the following motions filed herein:

> **MOTION:** **DARBY'S MOTION FOR ENTRY OF SUMMARY JUDGMENT (Doc. No. 120)**
>
> **FILED:** May 5, 2006
> _____
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED** in part and **DENIED** in part.

> **MOTION:** **MOTION FOR VOLUNTARY DISMISSAL OF COUNT II (Doc. No. 142)**
>
> **FILED:** August 2, 2006
> _____
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED** in part.

This is an action for infringement of United States Patent No. 6,871,116 (herein "the '116 Patent) (Count I), and violation of Florida's Deceptive and Unfair Trade Practices Act (Fla. Stat. §§ 501.204 and 501.211(1)) (Count III) (Doc. No. 1).[1] Defendant denies the allegations, and has counterclaimed for a declaration of non-infringement and invalidity (Doc. No. 33). Plaintiff moved for entry of a preliminary injunction, which the Court denied, noting the "numerous factual disputes concerning the similarity of the Vertique and Darby case picking systems" (Doc. No. 44). The case proceeded, and Defendant moved for a *Markman*[2] ruling (Doc. No. 67). The Court granted, in part, the motion (Doc. No. 132), finding that the preamble is a limitation on the claim; and that the claim must be construed as including a robot as defined in the Patent, and denying the motion to the extent it seeks any additional construction.

Prior to the Court's issuance of the *Markman* ruling, the instant motion was filed. In addition to the exhibits attached to the motion for summary judgment, Darby has filed a CD Numbered DA 05375 (Doc. No. 126). Vertique has filed a response in opposition to the motion (Doc. No. 130), with numerous attached exhibits. Supplemental papers, following issuance of the *Markman* ruling, were filed by both sides, with the Court's permission (Doc. Nos. 135-with attachments, and Doc. No. 137-with attachments). The Court has reviewed the briefs, the record and the applicable authorities. The motion for voluntary dismissal of Count II is **granted, in part**. Count II is dismissed, but the issues of attorney's fees and costs are carried with the case**.** The motion for summary judgment is **denied,** with respect to the Patent issues, and **granted,** with respect to the remaining state law count.

---

[1]Count II, alleging theft of trade secrets, has recently been withdrawn by Plaintiff (Doc. No. 139). The issue as to attorney's fees and costs incident to the voluntary dismissal is preserved for resolution after the trial.

[2]*Markman v. Westview Instruments, Inc.,* 52 F. 3d 967 (Fed Cir. 1995), *aff'd*, 517 U.S. 370 (1996).

## *SUMMARY JUDGMENT STANDARD*

A court will grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case under the applicable substantive law. Disputed issues of material fact preclude the entry of summary judgment, but factual disputes that are irrelevant or unnecessary do not. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). In determining whether the moving party has satisfied its burden, the Court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

## *FACTUAL BACKGROUND*

According to the Complaint, Vertique is a designer, manufacturer and supplier of automated and semi-automated full case order picking systems, and is the owner of the '116 Patent, granted on March 22, 2005, for the invention entitled DETERMINING PALLET CASE CONFIGURATIONS FOR PLACEMENT BY A ROBOT (Doc. No. 1, Patent at Exhibit A). Darby is a competitor, and Plaintiff alleges that the Darby case order picking system placed at a Pepsi facility in Warrenton, Virginia, and at a beverage facility in Orlando ("the Schenk facility"), are "copycats" and infringe the claims of the '116 Patent.

The Complaint also alleges that Darby misrepresented to the purchasers of the Darby systems in Virginia and Orlando that Darby "would supply systems the same as the Vertique system for substantially lower costs when in fact Darby could not provide the same system." (Complaint at Allegation 54). This is alleged to be an unfair method of competition.

The asserted claims of the Patent are claims 1, 2, 10, 11, 13-15, and 24 and 25. Claim 1 is an independent claim:

> What is claimed is:
>
> 1. A method of determining pallet layers for placement by a material handling system robot comprising:
>    identifying cases for inclusion in a pallet;
>    identifying case dimension information for the cases;
>    using the case dimension information, classifying the cases into at least one group, wherein each group is defined by a height range such that cases classified within a group have a height within the height range associated with that group; and
>    assigning cases of one of the groups to locations within a same pallet layer, wherein
>    the pallet layer has an area within a predefined area range.

Patent - Col. 15, Lines 37-50.

The Court has construed this language to find that the preamble ("for placement by a material handling systems robot") is a limitation on the claim. The Court further construed the word "robot" to have the definition set forth in the Patent itself:

> The term "robot" or "robotic system" as used herein, refers to a robotic case placement mechanism which is capable of placing a single case onto a pallet at a time.

Col. 4, Lines 62-65.

-4-

The parties have introduced a plethora of evidence, including numerous expert reports, regarding the Vertique and Darby systems.[3] It appears undisputed that the Darby system uses a storage and retrieval crane associated with the storage racks, which places cases on a conveyor to or from a rack; the conveyor takes the cases to an automatic palletizer (or hand palletizing station) to organize cases into layers and place the layers onto a pallet. The parties dispute, however, numerous factual issues relating to what the systems do or are capable of doing, such as whether a palletizer is a "robot," as that term is defined above; whether a palletizer is prior art; whether a palletizer is capable of placing a single case onto a pallet; whether the Darby system "assigns cases" or otherwise performs the method claimed; and whether the crane utilized by the Darby system is a robot, just to name a few. Indeed, the factual disputes are not limited to disputes between the two parties. For example, one inventor of the '116 Patent averred that a palletizer is a robot (Doc. No. 15, Exhibit 2, p. 3), while his co-inventor maintained that a palletizer is not a robot (Doc. No. 120-Exhibit E- at 33), and Plaintiff's expert testified that "I probably would not say that a palletizer is a robot, but that's just an interpretation on my own." (Doc. No. 120 - Exhibit E at 68).

The motion for summary judgment asserts not only that Darby did not infringe the '116 Patent, but that the Patent is invalid because three prior methods of palletizing (manual placement, placement via AutoPalletP3-"AP3"-software, and automatic palletizers) anticipate all the steps of the independent Claim. It is not disputed that manual palletizing (placing goods on a pallet by hand) existed prior to the Patent, although Plaintiff disputes whether this practices the claimed method. The parties dispute whether the AP3 software practices the method claimed, and also whether the software

---

[3]Certain exhibits consist of selected pages from what appear to be depositions. *See* Doc. No. 135- Exhibits 1 and 2; Doc. No. 120, Exhibit 5. These excerpts are identified only in the briefs (indeed, no title page is included) and cannot be viewed in context, due to the selective nature of the excerpts. Such evidence is not in proper form and is of limited utility.

is, in fact, prior art.[4]   The parties also dispute whether prior art palletizers practice the claimed method.

Darby also contends that the Patent is invalid due to obviousness. The parties dispute the factual basis of the various legal factors that are to be considered, including whether the prior art sources cited by Darby are, in fact, prior art.[5]

Darby contends that the Patent is also invalid as indefinite, in that the term "robot" is vague. The Court notes that it has since construed this term, and this particular contention is likely moot.

As for the state law claims, the papers are sparse with respect to the pertinent facts. It appears that Vertique claims a trade secret in the use of a "single-filer" or "descrambler" at the input to the system. (Doc. No. 130 at 18).  According to Darby's papers:

> The evidence relating to Vertique's allegations of theft of trade secrets is contained in the corporate representative, Jeffrey W. Stingel's deposition, (Ex. B, p. 78, l. 16 – 79, l. 3) wherein Mr. Stingel testifies as follows:

Q. . . . What is the basis for Vertique's contention that proprietary information was misappropriated?
A. Through watching the video we were able to see common results that were only to our system and his.
Q. Was there anything other than the video that caused Vertique to conclude that proprietary information has been misappropriated.
A. It was the video and the timing of the meeting with Jay Stingel.
Q. Nothing else.
A. Not to my knowledge.

---

[4] Darby offers evidence that the AP3 software is compatible for use with mechanized systems such as palletizers and pick and place machines and has been sold commercially in the United States for more than a year prior to filing the '116 Patent application. Affidavit of Thomas Moore, Doc. No. 39, Ex. 5. Vertique counters that the software is simply a pick list and has never been combined with an automated palletizer until Darby's system. Vertique also contends that the source code that makes up the software has not been publicly available as it is a trade secret. *See excerpt* of Deposition of Thomas Moore, Doc. No. 130, Exhibit B to Declaration of Vandana Koelsch.

[5] The AP3 software is asserted to be a trade secret (see footnote 3), and the '836 Patent referred to by Darby issued after the '116 Patent was filed.

(Doc. No. 120 at 18).

To counter, Vertique contends that it deposed a non-party witness Joseph Puglia, Vice President of Operations at Schenck (the Orlando facility), who testified that he visited both the Virginia and Florida Vertique systems.[6] It is contended that Puglia orally agreed to keep things confidential, but Puglia requested that Darby install at Schenk a single-filer, or descrambler, which automates the filing of the Darby sorter. Apparently, Darby did. This is the entirety of the claim for theft of trade secret, as set forth in the parties' papers. As the Plaintiff has withdrawn this claim, the Court need not address it further.

As for the unfair competition claim, Vertique asserts that Darby misrepresented its system to third parties. The spare evidence presented shows that Puglia testified that he selected the Darby system over the Vertique, because he saw them both and the Darby system handled the A items as well as the C items, but the Vertique system would not handle the A items. (Doc. No. 120, Exhibit M, deposition excerpt of Puglia.) Vertique does not dispute this testimony, but contends that Darby sold its system to Schenck below its costs, and argues (without citation to evidence) that the system is still not operational. Additional, Vertique contends that Darby "continues to make misrepresentations on the throughput of the Darby system," citing the following excerpt from the Declaration of Vandana Koelsch, attorney:

> I reviewed a letter from a third party which Darby designated as Confidential in which the third part [sic] indicates that Darby misrepresented facts about the Schenck facility.

Declaration of Vandana Koelsch, attached to Doc. No. 130.

---

[6] Vertique has not filed the deposition, but files a declaration of an associate attorney with counsel representing Plaintiff, stating that she has reviewed the depositions and summarizing the deposition testimony. *See* Declaration of Vandana Koelsch, attached to Doc. No. 130. Needless to say, this is no more than hearsay and does not constitute acceptable evidence.

### *ISSUES AND ANALYSIS*

*Non-Infringement*

A patent infringement analysis involves two steps: (1) claim construction and, (2) application of the properly construed claim to the accused product. *Markman,* 52 F.3d at 976. As noted by the Federal Circuit: "Summary judgment is appropriate when it is apparent that only one conclusion as to infringement could be reached by a reasonable jury. Summary judgment of noninfringement is appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, since such failure will render all other facts immaterial." *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1323 (Fed. Cir. 2001) (internal citations omitted). To prove infringement, the patentee must show that the accused device meets each claim limitation, either literally or under the doctrine of equivalents. *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999).

Here, the Court has construed the claims of the '116 Patent to require a "robot" and, further, that such "robot" "refers to a robotic case placement mechanism which is capable of placing a single case onto a pallet at a time." (Doc. No. 132.). As indicated in the factual summary above, application of the term "robot" to particular systems is a matter very much in dispute, even among the co-inventors themselves. Although the motion was brought and the issues were briefed prior to the Court's construction of the disputed Patent terms in the *Markman* determination, following the Court's claim construction, the parties' supplemental arguments merely shifted from factual disputes

as to what the Darby system does or does not do to factual disputes over whether the Darby system contains a robot and what that robot is *capable* of doing.[7]

Even this brief summary of the evidence submitted is sufficient to establish the existence of genuine issues of material fact are in abundance with respect to whether the Darby case picking system contains each limitation of the claims, either literally or by application of the doctrine of equivalents. On this record, summary judgment is not warranted on this ground.[8]

### *Invalidity*

Summary judgment of invalidity must be predicated on facts established by clear and convincing evidence. *Rockwell Int'l Corp. v. United States,* 147 F.3d 1358, 1362 (Fed. Cir. 1998). Here, too, the Court finds the existence of genuine issues of material fact preclude a finding at this stage that the '116 Patent is invalid.

### *Invalidity - Anticipation*

"Anticipation under 35 U.S.C. § 102 requires the disclosure in a single piece of prior art of each and every limitation of a claimed invention. *Electro Med. Sys. S.A. v. Cooper Life Sciences*, 34 F.3d 1048, 1052, 32 USPQ2d 1017, 1019 (Fed. Cir. 1994). Whether such art is anticipating is a question of fact. *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1576, 18 USPQ2d 1001, 1010 (Fed. Cir. 1991)." *Apple Computer, Inc. v. Articulate Systems, Inc.*, 234 F.3d

---

[7] Indeed, it appears without dispute that the Darby system does not "cherry pick"; that is, does not have a robotic arm that lifts one particular case at a time for placement on the pallet. It appears to place cases on the pallet on a layer-by-layer basis, either through virtue of an automatic palletizer or by hand. Vertique points out, however, that, depending on the size of the order, the Darby system *could* include a layer that consists of only one case. *See* Doc. No. 137.

[8] This finding with respect to the independent claim allows pretermission of any separate analysis of the dependent claims.

14, 20 (Fed. Cir. 2002). Here, Darby asserts that three aspects of the prior art anticipate the claims. The Court is not convinced on this record.

Manual palletizing does not disclose each and every limitation of the claimed invention because the Court has construed the preamble of the Claim to be a limitation, and the preamble refers to "placement by a material handling system robot." Manual palletizing involves placement of the cases by hand on a pallet; no robot is involved. As a matter of law, this prior art, standing alone, does not anticipate the '116 Patent.

As for the AP3 software, the record is not complete enough for the Court to find that it is clear and convincing evidence of invalidity. In the first instance, it is not clear if the AP3 software meets the limitation set forth in the preamble; that is, that the "pick list" apparently generated by the program is "for placement by a material handling system robot." Secondly, the factual dispute regarding what was publicly available with respect to this software precludes a summary finding.

The last identified prior art includes automatic palletizers, such as the T-Tek palletizer. Darby has proffered the Declaration of Brian Traff, vice-president of T-Tek Material Handling, Inc. (Doc. No. 120, Exhibit I). According to this Declaration, this palletizer pre-dates the '116 Patent and performs all of the methods set forth in the Claim. Vertique contends that prior art palletizers in general did not classify cases by height range (Doc. No. 130 at 13), but does not purport to address Mr. Traff's Declaration that his company's palletizer does, in fact, classify by case dimension, including height range. In addition to this uncertainty, the Declaration does not address whether the T-Tek palletizer uses robotic placement capability. The Court cannot find beyond genuine dispute that every element of the claim is disclosed exactly in this reference. On this record, summary judgment is not warranted.

*Invalidity - Obviousness*

To establish invalidity under 35 U.S.C. § 103, certain factual predicates are required before the legal conclusion of obviousness or nonobviousness can be reached. The underlying factual determinations to be made are (1) the scope and content of the prior art; (2) the differences between the claimed invention and the prior art; (3) the level of ordinary skill in the art; and (4) objective evidence of non-obviousness, such as commercial success, long-felt but unsolved need, failure of others, copying, and unexpected results. *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545, 148 USPQ 459, 467 (1966).

Darby contends that the '116 Patent is invalid as obvious, in that it combines a robotic container delivery system which places individual containers on a pallet, set forth in U.S. Patent 6,729,836 ("the'836 Patent" attached to Doc. No. 120 as Exhibit J), with the AP3 software. In addition to reiterating its contention that the AP3 software is not prior art, Vertique points out that the '836 Patent was issued well after the '116 Patent application was filed, and the Patents share some of the same inventors. As such, according to Vertique, the '836 Patent was not prior art in that it was not the work of another and was not available to the public or known in this country at the time the application for the '116 Patent was filed. *See Riverwood International Corporation v. R. A. Jones & Co., Inc.,* 324 F.3d 1346 (Fed. Cir. 2003). These are factual issues which are not sufficiently developed in this record, and thus, not amenable to a summary disposition. Moreover, the record is simply too sparse with respect to the remaining *Graham* factors.[9]

---

[9]As is painfully obvious from the papers, Darby's attempt to swat every fly in one twenty-one page motion necessarily dilutes the level of detailed analysis it gives to each of its numerous contentions. In attempting to set forth the appropriate legal standards, factual predicate, and argument as to why it should prevail on summary judgment on the separate contentions of non-infringement of the independent and the dependent claims; invalidity based on three distinct grounds of anticipation; invalidity based on obviousness; invalidity based on indefiniteness; a showing of no trade secret

(continued...)

*Invalidity - Indefiniteness*

Darby contends that the Patent is indefinite due to ambiguity for the term "robot." As the Court has since construed this term, consistent with the definition provided in the Patent, this objection is deemed moot, at least for present purposes.

*Trade Secret Theft*

As Plaintiff has withdrawn this Count, it is dismissed. To the extent Defendant seeks attorney's fees and costs incident to defending the count, such can be sought by motion following trial on the merits. For present purposes, the motion to dismiss the count is **granted.**

*Deceptive Trade Practices*

Vertique contends that Darby's misrepresentation as to what Darby's own system could accomplish and selling it below cost, amounts to unfair competition under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). The Court disagrees and finds that summary judgment should be granted Darby as a matter of law. The parties agree that the statute, at the time of the Complaint, prohibited "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." *See* Fla. Stat. § 501.204. As this court recently noted, " The concept of 'unfair or deceptive acts' is not clearly defined, but some cases have suggested that the conduct must offend established public policy and be 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Advanced Protection Technologies, Inc. v. Square D Co.*, 390 F.Supp. 2d 1155, 1164-5 (M.D. Fla. 2005) (internal citations omitted).

---

[9](...continued)
theft; and two distinct theories with respect to the deceptive competition claim, Darby succeeds in merely introducing the Court to the likely issues at trial, which may have been a purpose of the motion.

Applied here, Vertique has not met its burden of showing that Darby engaged in such practices, nor has Vertique established that it is entitled to standing to pursue a claim for damages based on an asserted misrepresentation by and to another. *See* Fla. Stat. § 501.210(2) (" In any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs as provided in s. 501.2105."). The "evidence" presented as to the "misrepresentations" is not evidence at all, but an anonymous, hearsay statement set forth by Plaintiff's counsel that she "reviewed a letter from a third party which Darby designated as Confidential in which the third part [sic] indicates that Darby misrepresented facts about the Schenck facility." Vertique does not counter Puglia's testimony regarding why he chose the Darby system, and Plaintiff points out no other evidence of a deceptive practice. Moreover, the Court fails to see how the selling price of a system (which has not been established, in any event) is a misrepresentation or immoral practice. A cause of action under FDUTPA can not be sustained on so thin a reed. Summary judgment on Count III is **granted** in Darby's favor.

### *CONCLUSION*

The motion for summary judgment is denied, as to the Patent claims (Count I), and granted, as to the state law claim (Count III). Count II is **dismissed.** The case will proceed to trial on the Patent issues only. Entitlement to attorney's fees and costs will be determined upon proper motion post-trial.

**DONE** and **ORDERED** in Orlando, Florida on August 18, 2006.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record